J-S27001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: X.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3982 EDA 2017 |

Appeal from the Decree November 8, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0001036-2017,
FID:  51-FN-001721-2015

| | | |
|---|---|---|
| IN THE INTEREST OF:  C.W.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  X.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3986 EDA 2017 |

Appeal from the Decree November 8, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0001037-2017,
FID:  51-FN-001721-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: S.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  X.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3990 EDA 2017 |

J-S27001-18

Appeal from the Decree November 8, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0001038-2017,
FID: 51-FN-001721-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: J.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: X.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 4003 EDA 2017 |

Appeal from the Decree November 8, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0001041-2017,
FID: 51-FN-001721-2015

BEFORE: SHOGAN, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY SHOGAN, J.: **FILED JULY 16, 2018**

Appellant, X.M. ("Mother"), appeals from the decrees entered November 8, 2017, granting the petitions filed by the Philadelphia County Department of Human Services ("DHS") to involuntarily terminate her parental rights to her children, R.W., a son born in December of 2012; C.W.S., a daughter born in October of 2011; S.W., a daughter born in January of 2015; and J.W., a

- 2 -

daughter born in May of 2004 (collectively "the Children"); pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[1]  We affirm.

The trial court set forth the extensive history of this case in its Pa.R.A.P. 1925(a) opinion, which we adopt for purposes of this appeal.  Trial Court Opinion, 2/13/18, at 3-14.  On December 8, 2017, after the trial court terminated Mother's parental rights to the Children, Mother filed a timely notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Mother raises the following issues for our review:

A. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT INVOLUNTARILY TERMINATED MOTHER'S PARENTAL RIGHTS WHERE SUCH DETERMINATION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE UNDER THE ADOPTION ACT, 23 PA.C.S.A. §2511(A) (1), (2), (5) AND (8)?

B. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT INVOLUNTARILY TERMINATED MOTHER'S PARENTAL RIGHTS WITHOUT GIVING PRIMARY CONSIDERATION TO THE EFFECT THAT THE TERMINATION WOULD HAVE ON THE DEVELOPMENTAL, PHYSICAL AND EMOTIONAL NEEDS OF THE CHILD AS REQUIRED BY THE ADOPTION ACT, 23 PA.C.S.A. §2511(B)?

Mother's Brief at 4.

---

[1] In separate decrees entered on November 8, 2017, the trial court terminated the parental rights of V.S., the putative father of R.W. and S.W.; the parental rights of R.S., the father of C.W.S.; and the parental rights of any unknown putative father of R.W., S.W., and J.W.  None of these men has filed an appeal, nor are they parties to the instant appeal.

In reviewing an appeal from an order terminating parental rights, we adhere to the following well-established standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; [*In re:*] *R.I.S.*, 36 A.3d [567,] 572 [(Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, ___ Pa. ___, 34 A.3d 1, 51 (2011); *Christianson v. Ely*, 575 Pa. 647, 838 A.2d 630, 634 (2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064, 1066 (1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental

rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained that:

> [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

***Id.*** (quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). As previously stated, the trial court terminated Mother's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and Section 2511(b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights

of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving notice of the filing of the petition.

23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8), and (b).

This Court has explained that the focus in terminating parental rights under Section 2511(a) is on the parent, but under Section 2511(b), the focus is on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). For purposes of this appeal, we first analyze this case under Subsection 2511(a)(2), then under Section 2511(b), as did the trial court in its opinion filed February 13, 2018.

Our Supreme Court set forth the proper inquiry under Subsection 2511(a)(2) as follows:

[Section] 2511(a)(2) provides [the] statutory ground[] for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." . . .

[The Supreme Court] has addressed incapacity sufficient for termination under § 2511(a)(2):

A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption

- 7 -

> Act, concluded that a parent who is incapable of
> performing parental duties is just as parentally unfit
> as one who refuses to perform the duties.
>
> *In re Adoption of J.J.*, 515 A.2d 883, 891 (Pa. 1986), *quoting*
> *In re: William L.*, 383 A.2d 1228, 1239 (Pa. 1978).

*Adoption of S.P.*, 47 A.3d at 827.

This Court has stated that a parent is required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id*. at 340.

The trial court found that Mother's conduct warranted termination of her parental rights to the Children with the following analysis:

> This [c]ourt heard clear and convincing evidence from Case Manager, Mary Muchiri, [Community Umbrella Agency ("CUA")] Case Manager, who testified credibly that the Children were committed to DHS in July 2015 regarding the unsuitable housing situation: no furniture; electrical service to the apartment was terminated on 7/13/2015; the home was without working air conditioning, a water heater, a stove, or a refrigerator. Mother has seven Children, all in the DHS dependency system, and all were in Mother's care when placed into care.
>
> Ms. Muchiri testified the parental objectives for Mother were: 1) work with CUA to be referred to housing programs; 2) complete a parenting education class; 3) follow up with her referral to the Achieving Reunification Center (ARC) to address deficits; 4) follow up with Behavioral Health Services (BHS) to determine services; and 5) follow up with the protection from abuse order. Subsequently, a Psychological Evaluation and a Parental Capacity Evaluation were ordered for Mother.
>
> Ms. Muchiri also testified that Mother did complete parenting classes and domestic violence counseling. Mother continues to

- 8 -

attend mental health services, however, the housing issue continues to be unresolved and Mother lives sporadically with friends. Regarding visitation, she testified that she has supervised visits, and sees very little close interaction between Mother and her Children. Her current visitation schedule is supervised once per week, however, Mother missed her visitation in September 2017. She opined that the Children would not suffer irreparable harm if Mother's parental rights were terminated because the older Children seem to understand that Mother is not able to take care of them. And the younger ones do not seem to have any relationship with Mother that would be affected. She opined it would be in the best interests of the Children if they were adopted by their Foster Parents because they have close relationships with their Foster Parents and all seem to be comfortable and safe in their homes.

This [c]ourt also heard the credible, clear and convincing [e]xpert testimony from Dr. William Russell, Forensic Psychologist. He testified he conducted a Parenting Capacity Evaluation on Mother in November 2016. At that time, Dr. Russell noted that Mother's most obvious barrier to reunification with her Children is the lack of suitable housing. Complicating that issue is the fact that Mother has a pattern of engaging in relationships of domestic violence, has no support system in place, such as family and friends who she can count on for assistance. In light of Mother's cognitive issues which included being unsure of dates, people, places, and even her address, finding adequate employment will be difficult. He recommended that CUA aid Mother in registering with the Office Intellectual Disabilities, aid Mother in obtaining her green card, and continue to attend mental health treatment. Mother should continue with visitation, however the prognosis for reunification is guarded. Dr. Russell noted he reviewed [General Protective Services ("GPS")] Reports dating back to 2001, and that Mother has never had stable housing for at least 15 years with no change. For these reasons, which continue to exist now, he stated that Mother could not provide safety and stability to her Children, and that the prognosis for Mother to remedy that would be extremely poor.

This [c]ourt found clear and convincing evidence that Mother has refused or failed to perform parental duties, and that Mother lacks the present capacity to perform those parental responsibilities. This [c]ourt found that DHS proved by clear and convincing evidence that Mother is incapable of providing safety

and permanency for her Children now and in the future. Finally, this [c]ourt is not persuaded that Mother can or will remedy the conditions which brought the Children into court supervision.

Trial Court Opinion, 2/13/18, at 18-20.

Based on the foregoing, we discern no abuse of discretion by the trial court because Mother's repeated and continued incapacity, neglect, or refusal to perform her parental duties, particularly her years-long inability to provide safe and stable housing, has caused the Children to be without essential parental care, control, or subsistence necessary for their physical and mental well-being. Accordingly, the trial court's findings are supported by the record, and the trial court's legal conclusions are not the result of an error of law or an abuse of discretion. Therefore, we conclude that the record supports the termination of Mother's parental rights under Subsection 2511(a)(2), and we affirm the trial court's decision. *Adoption of S.P.*, 47 A.3d at 826-827. In so doing, we adopt the trial court's analysis as our own. Trial Court Opinion, 2/13/18, at 18-20.

Having concluded that Mother's parental rights were properly terminated pursuant to Subsection 2511(a)(2), we now address Mother's second issue and review the termination of Mother's parental rights under 23 Pa.C.S. § 2511(b). *L.M.*, 923 A.2d at 511. Mother argues that the trial court erred in determining that DHS met its burden of proving by clear and convincing evidence that termination was in the best interests of the Children. Mother's Brief at 13-15. Mother asserts that the "testimony from Mary

Muchiri, Case Manager from Bethanna, that the [C]hildren would not suffer any irreparable emotional harm if Mother's parental rights were to be involuntarily terminated" was based upon observations of Mother and the Children at two supervised visitations. *Id*. at 14. Mother contends that Ms. Muchiri did not have a sufficient basis upon which to render a credible opinion on the matter, and the trial court could not have based its determination on clear and convincing evidence. *Id*. at 14-15.

> Our Supreme Court has stated the following:
>
> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "intangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, 620 A.2d [481,] 485 [(Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

We have explained that, in conducting a bond analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). *See also In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008) (observing that, in analyzing a parent-child bond, neither statute nor precedent require that a formal bonding evaluation be performed by an expert). This Court has also observed that no bond worth preserving is formed

between a child and a natural parent where a child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008). In addition, it is appropriate to consider a child's bond with his or her foster parents. *In re: T.S.M.*, 71 A.3d at 268.

Furthermore, in *In re: T.S.M.*, our Supreme Court set forth the process for evaluation of the existing bond between a parent and a child, and the necessity for the court to focus on concerns of an unhealthy attachment and the availability of an adoptive home. The Supreme Court explained the following:

> [C]ontradictory considerations exist as to whether termination will benefit the needs and welfare of a child who has a strong but unhealthy bond to his biological parent, especially considering the existence or lack thereof of bonds to a pre-adoptive family. As with dependency determinations, we emphasize that the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved. *See, e.g.,* [*In the Interest of*] *R.J.T.*, 9 A.3d [1179,] 1190 [(Pa. 2010)] (holding that statutory criteria of whether child has been in care for fifteen of the prior twenty-two months should not be viewed as a "litmus test" but rather as merely one of many factors in considering goal change). Obviously, attention must be paid to the pain that inevitably results from breaking a child's bond to a biological parent, even if that bond is unhealthy, and we must weigh that injury against the damage that bond may cause if left intact. Similarly, while termination of parental rights generally should not be granted unless adoptive parents are waiting to take a child into a safe and loving home, termination may be necessary for the child's needs and welfare in cases where the child's parental bond is impeding the search and placement with a permanent adoptive home.

In weighing the difficult factors discussed above, courts must keep the ticking clock of childhood ever in mind. Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail, as we have in this case, the result, all too often, is catastrophically maladjusted children. In recognition of this reality, over the past fifteen years, a substantial shift has occurred in our society's approach to dependent children, requiring vigilance to the need to expedite children's placement in permanent, safe, stable, and loving homes. [The Adoption and Safe Families Act of 1997, P.L. 105-89] ASFA[,] was enacted to combat the problem of foster care drift, where children . . . are shuttled from one foster home to another, waiting for their parents to demonstrate their ability to care for the children. *See In re R.J.T.*, 9 A.3d at 1186; *In re Adoption of S.E.G.*, 901 A.2d [1017,] 1019 [(Pa. 2006)]. This drift was the unfortunate byproduct of the system's focus on reuniting children with their biological parents, even in situations where it was clear that the parents would be unable to parent in any reasonable period of time. Following ASFA, Pennsylvania adopted a dual focus of reunification and adoption, with the goal of finding permanency for children in less than two years, absent compelling reasons. *See*, 42 Pa.C.S. § 6301(b)(1); 42 Pa.C.S. § 6351(f)(9) (requiring courts to determine whether an agency has filed a termination of parental rights petition if the child has been in placement for fifteen of the last twenty-two months).

*In re: T.S.M.*, 71 A.3d at 268-269.

The trial court offered the following with regard to the bond between Mother and the Children and the requirement of the best interests of the Children:

Mary Muchiri, Case Manager from Bethanna, provided credible, persuasive testimony regarding the Children's physical and emotional needs and best interests. She opined that the Children would not suffer irreparable harm if Mother's parental rights were terminated, and it would be in their best interests to be adopted. All of the Children have close, loving relationships with their Foster Parents, and they are safe. The youngest Child, S.W., who is two years-ten months old has no recognition of Mother and no relationship with Mother. She opined that the Children would not suffer irreparable harm if Mother's parental

- 13 -

rights were terminated because the older Children seem to understand that Mother is not able to take care of them. And the younger ones do not seem to have any relationship with Mother that would be affected. She opined it would be in the best interests of the Children if they were adopted by their Foster Parents because they have close relationships with their Foster Parents and all seem to be comfortable and safe in their homes. Ms. Muchiri noted that C.W.S., and J.W., ten and thirteen years old respectively, are receiving therapy at The Village, and have expressed to her that they want to be adopted by their Foster Parent, who fulfills their emotional and physical needs. R.W., who is four years old, also obtains his emotional and physical needs from his foster parent.

Dr. Russell also provided this [c]ourt with credible [e]xpert testimony when he noted that Mother had a lack of insight into why her Children were in care, and that would negatively impact her ability to remedy the situations that brought the Children into care. Historically, there have been GPS Reports going back to 2001 with similar problems, lack of housing, safety issues, and not paying bills. All the same issues have been around for 15 years with no change. He concluded that based on his evaluation and review of the records, Mother's limitations cannot be remedied and that she will continue to lack the capacity to parent her Children and lacks any understanding of the specialized services that her Children need.

Therefore, the Court found that clear and convincing evidence was presented that the conditions which led to the Children's placement continue to exist, and the Children would not suffer irreparable harm if Mother's rights were terminated and adoption would be in their best interest.

Trial Court Opinion, 2/13/18, at 21-22.

Upon review of the certified record, we conclude that there is clear and convincing evidence to support the trial court's findings and conclusions with regard to Section 2511(b), and that they are not the result of an error of law or an abuse of discretion. Here, the trial court considered the needs and welfare of the Children and conducted a proper bond analysis, which we set

- 14 -

forth above and adopt as our own. Trial Court Opinion, 2/13/18, at 21-22.

Further, as we stated in *In re Z.P.*, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re Z.P.*, 994 A.2d at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004). Again, as the record supports the trial court's factual findings, and the court's legal conclusions are not the result of an error of law or an abuse of discretion, we affirm the trial court's decision with regard to Section 2511(b). *In re Adoption of S.P.*, 47 A.3d at 826-827. Accordingly, we affirm the trial court's decrees terminating Mother's parental rights to the Children.

Decrees affirmed.

Judge Dubow did not participate in the consideration or decision of this Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/16/18

- 15 -